CHARLES CARGILL, Plaintiff in Error, *versus* JOTHAM SEWALL.

The minister of a parish settled for life, or for a term of years, is seized of an estate of freehold upon condition in the ministerial land, and is answerable for waste.

Being answerable for waste he has his remedy by an action of trespass against a stranger for any injury done to the freehold.

The right of action being vested in him personally, an action commenced by him before, may be prosecuted to final judgment after the ministerial relation has been dissolved.

THIS was a writ of error to reverse a former judgment of the Court in an action of trespass *quare clausum*, in which the plaintiff in error was defendant.

The error assigned was, that said action was commenced by said Sewall by writ dated the 11th day of August, A. D. 1836, in his character and capacity of clerk and minister of the first Congregational Church and Parish in Newcastle, in said county of Lincoln, for an alleged trespass upon a lot of land in said Newcastle, called and alleged in said writ to be a ministerial lot and known as such — that the only right or title which the said Sewall had or pretended to have, or to which he, the said Sewall, offered any evidence tending to prove, was his being the settled and ordained minister over said church and parish in said Newcastle, and that all the damages and costs awarded to him in said action, belong to the settled and ordained minister of said parish — and that there is error in said judgment, in this, that after the last continuance of said action in May last and before final judgment was rendered thereon, the said Sewall had ceased to be clerk and minister of said first Congregational parish in Newcastle, to wit, from and after the 14th day of August now last past, at which time the ministerial connexion between said Sewall and said church and parish was wholly terminated and dissolved — and that the said Sewall has removed from said parish to the town of Westbrook, in the county of Cumberland, and that no judgment could be rendered in the name of said Sewall, after he had ceased to be the clerk and minister of said parish.

A motion was filed by the defendant to quash the writ of

error because the same was not served on the parish of which he was a minister when the suit was commenced.

*Mellen* and *F. Allen,* for the plaintiff in error. The original plaintiff has no interest in his *personal* or *natural* capacity, in the premises upon which the trespass was committed. His right to recover arose solely in consequence of his relation to the parish as minister, and continued no longer than he sustained that relation. Whether the relation terminated by death, resignation, or removal, the consequences are the same; the suit is, *ipso facto,* abated. It is analogous to a suit by a Judge of Probate on an administrator's bond, which is discontinued by the resignation of the Judge of Probate. *Cutts, Judge,* v. *Parsons*; *Holden, Judge,* v. *Cook,* 12 Mass. R. 575. The action being discontinued, his successor might institute a new suit. His connexion with the parish was formed by a written contract. By that contract, a trust was created by operation of law, which ceased when he ceased to be minister of the parish, as much as if he had died during the action. *Weston* v. *Hunt,* 2 Mass. R. 500. The successor might institute a suit. The minister is merely a trustee, and he is to account for what he receives. As a sole corporation, there can be no termination to his existence. The parson, *quatenus* parson, like the king, never dies. 1 Bl. Com. 470. The defendant in error, has been settled in Westbrook. Could he maintain a suit for an injury done to the parish property in that town? Could he maintain actions in the capacity of minister of two parishes? It would seem not. 3 Com. Dig. 210. When one, having a benefice with cure, accepts another with cure, the first shall be void. The plaintiff having commenced the suit in his official capacity, that being annihilated, he has no rights in his personal character. After the termination of his ministerial relation, could he collect and retain the money? Could he discharge a suit commenced? It is apprehended he could not; for the damages to be recovered are for the use, not of the minister, but of the parish. Neither could he commence a suit. If he could not commence, nor discharge a suit commenced, neither could he prosecute a suit after his par-

Cargill v. Sewall.

ochial connexion has terminated — his official, having the same effect as his natural death.

*Mitchell,* for the defendant in error. The writ in this case should have been served on the first parish in Newcastle. The argument of the plaintiff goes on the ground that when there is no minister the fee is in abeyance. When he ceased to be minister, the parish held the use and benefit to themselves. They were the parties interested in this judgment, and are the only parties upon whom service should have been made. *Porter* v. *Rummery,* 10 Mass. R. 64.

This suit is entitled to no favor, because substantial justice has already been done ; and it is a general rule, that a man cannot reverse a judgment for error, unless he can show the error to his disadvantage. *Shirley* v. *Lunenburgh,* 11 Mass. R. 383 ; 5 Coke, 39 ; 8 Co. 59.

The opinion of the Court was delivered by

WHITMAN C. J. — The plaintiff claims to have a judgment against him in this Court, wherein the defendant in error was plaintiff, reversed, because the plaintiff, in that action, which was trespass *quare clausum fregit,* sued, styling himself clerk and minister of the first Congregational parish in Newcastle ; and before judgment was rendered therein, had ceased to be such minister ; the land on which the trespass was alleged to have been committed, being ministerial land.

The plaintiff in error contends, that when the plaintiff, in that suit, ceased to be the minister of the parish, the suit then pending *ipso facto* abated, or that it worked a discontinuance ; and so that the judgment, thereafter entered up, was erroneous. He contends, that the dissolution of the parochial relations was tantamount to a natural death, as it respected the action pending. The arguments of his counsel, which were in writing, were learned and ingenious on the subject. Many supposed analogous cases were cited, and urged upon the attention of the Court, with great force ; and much analogical reasoning has been gone into, which would have had great

weight if the state of the case were such as it was assumed to be.

It was assumed, that the suit was by the plaintiff, in his ministerial capacity, solely: and it was likened to that of many other persons, suing in an artificial capacity, which, when it ceases, terminates the power to do and perform any and every act, depending upon such capacity.

But it is apprehended, that this is altogether a mistaken view of the subject. The plaintiff in that suit did, to be sure, style himself clerk and minister. But this may, if the merits of the case will admit of it, be taken and deemed to be merely *descriptio personæ.* It may, and, indeed, must be contended by the plaintiff in error, that the merits are not such as to render this admissible. It is true, that the land, on which the trespass was alleged to have been committed, was described, in the plaintiff's declaration, as a ministerial lot. This, however, may also be regarded merely as a description of the land on which the trespass was committed, provided it be not essential to the maintenance of the action by the plaintiff in his artificial character or capacity solely.

The plaintiff, in this case was seized and possessed of the *locus in quo.* His estate was a tenancy of a certain description. If settled for life, as the minister of the parish, it gave him an estate of freehold upon condition; if for a term of years, his estate in the land was commensurate with the term. The usufruct was in him, for the time he might be so continued in the occupancy. He might cut thereform, what in law is denominated, housebote: but like other tenants, having less than a fee, he could not commit waste. Ecclesiastics are punishable for waste on their church lands or glebes. 2 Atk. 217; Bacon, title waste, D. All such tenants are answerable, not only for actual, but for permissive waste. If a trespass be committed, on their tenements, by a stranger, they are answerable for it, as they have their remedy by an action of trespass, against the stranger. 4 Kent, 77; 2 Inst. 145, 6; Bacon, title waste, H.

Cargill *v.* Sewall.

The tenant, Sewall, then, had all the rights incident to his tenancy. If a stranger trespassed upon the land, a right of action accrued to him, and vested in him personally. He might have brought his action without alluding to the nature of his tenure. His description, then, of himself as minister, and of the land as a ministerial lot, may be regarded as superfluous, and may be rejected as such or as merely descriptive. If the right of action was in him personally, when commenced, it would follow him, after his tenure ceased. If trespass be committed on land of the owner in fee, or as tenant of any less estate, and he, subsequently, parts with his estate, his right of action for the trespass remains, whether commenced before or after parting with the estate. As the defendant in error was the tenant of the land, when the trespass was committed; as he was answerable therefor as for waste; as the right of action for the trespass vested in him personally, and continued in him after he parted with the estate, the judgment, against the plaintiff in error, was properly entered up and must be affirmed.

We have taken no notice of the objections, of the defendant in error, to the service or to the sustaining of the writ of error. The view, we have taken of the case, has rendered it unnecessary to do so.